# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>BRYANT OLIVE,<br><br>  Defendant. | Case No. CR12-2024<br><br>ORDER FOR PRETRIAL DETENTION |

On the 10th day of September, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Special Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by his attorney, Michael K. Lahammer.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 22, 2012, Defendant Bryant Olive was charged by Indictment (docket number 15) with conspiracy to distribute heroin (Count 1) and money laundering conspiracy (Count 12). At the arraignment on September 5, 2012, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 5, 2012.

At the hearing, Special Agent Kelly Meggers of the Iowa Division of Narcotics Enforcement testified regarding the circumstances underlying the instant charges.[1] Defendant is named in a conspiracy to distribute heroin in Waterloo, Iowa. In May 2010, DEA Task Force officers were introduced to Lucious Simmons and began purchasing heroin from him. As part of the investigation of the drug conspiracy, law enforcement placed wiretaps on telephones, and learned that Arthur Scott was a major source for heroin

---

[1] Meggers is currently assigned to the DEA Drug Task Force in Cedar Rapids.

in a large organization of mid-level and lower-level drug dealers. In April 2011, numerous arrests were made, and, according to Meggers, some of the mid-level and lower-level dealers "stepped up" to take a larger role in the drug conspiracy, including Defendant.

Task Force Officer Meggers testified that Defendant was a "transporter" and drove other individuals involved in the conspiracy back and forth from Waterloo to Chicago, Illinois, to get heroin. Defendant was paid in heroin and gas money for his services. According to Meggers, Defendant eventually also began to sell heroin in Waterloo. On March 15, 2012, Defendant made statements to law enforcement regarding others involved in the conspiracy, including heroin sources. Defendant also admitted taking individuals involved in the conspiracy to Chicago to get heroin.

According to the pretrial services report, Defendant is 54 years old. He was born and raised in Chicago. He moved to Waterloo in 1978. His mother and two siblings all currently reside in Waterloo. At the time of his arrest, Defendant resided with his mother. He is currently single, but was married once in the past. He has an adult daughter from that marriage. He also has another adult daughter from a prior relationship.

Defendant is currently unemployed due to a diagnosis of lung cancer in 2010. He has received disability benefits since June 2012. He was last employed by FP&R, Inc., in Waterloo from 2005 to 2010. Since his cancer diagnosis, Defendant has been undergoing treatment by receiving quarterly injections of Interferon. Defendant advised the pretrial services officer that he may soon need to undergo chemotherapy treatment as well. Additionally, Defendant suffers from high blood pressure, and is prescribed medication as treatment. Defendant reported no history of mental health issues. However, his mother told the pretrial services officer that Defendant was diagnosed with bipolar disorder one year ago, and is prescribed Prozac for that disorder.

Defendant told the pretrial services officer that he has "always had a problem" with alcohol consumption. He stated that he began drinking alcohol around age 11. Defendant also reported using heroin at least once per week throughout most of his adult life. He stated that he first started using heroin at age 15 or 16. His last use was the day before his

arrest on the instant federal offense. According to Defendant, he has undergone substance abuse treatment "at least ten times" in the past.

Defendant has an extensive criminal record and a history of failing to appear for court proceedings. In 1979, Defendant was charged in Cook County, Illinois, with deceptive practices. The charge was "stricken with leave to reinstate." In 1980, Defendant was charged with theft on two separate occasions. He was convicted on one of the charges, and given 1 year probation.[2] In 1981, Defendant was arrested three times on separate occasions. Two of the charges were not prosecuted, and the third was stricken.

In January 1987, in Black Hawk County, Iowa, Defendant was charged and later convicted of fifth degree theft. In November 1987, Defendant was charged and later convicted of forgery. He was given a 5 year suspended prison sentence and 5 years probation. In January 1988, while the forgery charge was pending, Defendant was charged and later convicted of third degree theft. In January 1989, while on probation on the forgery and theft charges, Defendant was charged and later convicted of delivery of cocaine. He was sentenced to 10 years in prison and his probation in the earlier charges was revoked. In May 1989, Defendant was placed on shock probation. In April 1992, Defendant was charged and later convicted of operating a vehicle without the owner's consent and fourth degree theft. He was sentenced to 2 years in prison on vehicle charge and 1 year in prison on the theft charge. Additionally, his shock probation was revoked. In February 1993, Defendant was placed on work release. He was paroled in July 1993. His parole was revoked in October 1993, and he was sent back to prison. In December 1994, Defendant was again placed on work release. He was paroled in April 1995. In November 1995, his parole was revoked again, and he was returned to prison. In May 1996, Defendant was paroled to immediate discharge.

In March 1997, Defendant was charged and later convicted with multiple counts of forgery. Twice he failed to appear for his initial appearance. A warrant was issued and

---

[2] The discharge date of his probation is unknown.

3

later served on his second failure to appear. In April 1997, while his forgery case was pending, Defendant was charged and later convicted of fifth degree theft. Defendant failed to appear for his arraignment twice on that charge. In May 1997, while charges were pending against him, Defendant was charged in four separate cases with forgery twice (two counts and 17 counts respectively), unauthorized use of a credit card (seven counts), and third degree theft. On January 2, 1998, Defendant was sentenced to various prison terms on all these charges. In April 2002, Defendant was placed on work release. He was paroled in August 2002. Between December 2002 and September 2005, Defendant absconded from parole, escaped twice, had his work release revoked twice, and had his parole revoked once. In June 2008, he was placed on work release, and later paroled in October 2008. His sentence was discharged in April 2009.

In 2002, while on parole, Defendant was charged and later convicted of assault. In January 2003, while on work release, Defendant was charged and later convicted of voluntary absence. In April 2005, while on parole, Defendant was charged and later convicted of forgery. In August 2005, while on work release and while on probation, Defendant was charged and later convicted in separate instances of fifth degree theft and voluntary absence.

In November 2011, while on parole, Defendant was charged with third degree theft. In February 2012, while on parole, Defendant was charged in separate counts with forgery and second degree theft. All of these charges are scheduled for trial in state court.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

## A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court

must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin and money laundering conspiracy. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, pursuant to § 3142(e)(3)(A), there is a rebuttable presumption in favor of detention. Regarding the weight of the evidence, it is difficult for the Court in a detention hearing to weigh the evidence of an alleged conspiracy. The Court notes, however, in statements to law enforcement, Defendant admitted taking individuals involved in the conspiracy to Chicago to get heroin. Defendant also identified heroin sources and individuals involved in the conspiracy.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results in overdose and death. Defendant is a heroin addict, and told the pretrial services officer that he had used heroin at least once per week for his entire adult life. Defendant also has an extensive criminal record, including a felony drug conviction for the delivery of cocaine. Moreover, Defendant has a history of violating pretrial release, probation, and parole. Additionally, Defendant has a history of failing to appear for court proceedings. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Therefore, based on the serious nature and circumstances of the offense, Defendant's substantial criminal record, including a felony drug conviction, his history of violating pretrial release, probation, and parole, his history of failing to appear for court proceedings, his long-term use of heroin, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds

by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1.      The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.      The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.      On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.      The time from the Government's oral motion to detain (September 5, 2012) to the filing of this Ruling (September 12, 2012) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 12th day of September, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA