# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYDELL TALBERT,<br><br>Defendant. | Case No. CR12-2024<br><br>ORDER FOR PRETRIAL DETENTION |

On the 18th day of September, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by his attorney, Chad R. Frese.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 22, 2012, Defendant Raydell Talbert was charged by Indictment (docket number 15) with conspiracy to distribute heroin (Count 1), distribution of heroin near a protected location (Count 10), possession with intent to distribute (Count 11), and money laundering conspiracy (Count 12). At the arraignment on September 5, 2012, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 5, 2012.

At the hearing, Cedar Rapids Police Officer Brian Furman testified regarding the circumstances underlying the instant charges.[2] Defendant is named in a conspiracy to distribute heroin in Waterloo, Iowa. In May 2010, DEA Task Force officers were introduced to Lucious Simmons and began purchasing heroin from him. As part of the

---

[1] The Court notes parenthetically that the detention hearing was originally scheduled for September 10; however, on Defendant's motion, it was rescheduled to September 18, 2012.

[2] Furman is currently assigned to the DEA Drug Task Force in Cedar Rapids.

investigation of the drug conspiracy, law enforcement placed wiretaps on telephones, and identified approximately 40 people involved in the conspiracy. The conspiracy originally was a pyramid organization. Duane Appling was at the top of the pyramid, but he fled after being arrested on state charges. Once Appling fled, different individuals in the conspiracy started rotating as suppliers of heroin in Waterloo.

Officer Furman testified that Defendant initially got involved with the drug conspiracy in 2006 or 2007, when it was headed up by Appling. In 2009, Defendant was incarcerated on state drug charges. When he was paroled in February 2012, Defendant returned to the drug conspiracy. Law enforcement has confirmation from several co-conspirators that Defendant was involved in the conspiracy, including statements from Alfred Scott that he purchased heroin from Defendant on a daily basis for 1 to 2 years. Additionally, in the spring of 2012, the DEA Task Force received information from the Tri-County Task Force that Defendant was selling heroin in Waterloo.

Law enforcement had information that Dominic Watts, a co-defendant in this matter, was going to Chicago to purchase heroin to bring back to Waterloo. On April 10, 2012, law enforcement conducted a traffic stop on a vehicle driven by Defendant. Norma McKenzie and Watts were passengers in the vehicle. Law enforcement found 75 grams of heroin in Defendant's pants. Defendant admitted working with Watts in the sale of heroin in Waterloo. McKenzie told law enforcement that Defendant was her source for heroin.

In May 2012, law enforcement learned that Defendant was still selling heroin. On August 14, 2012, law enforcement set up a controlled purchase of heroin from Defendant. A Confidential Informant ("CI") contacted Defendant by telephone to set up a drug deal. The phone call was recorded by law enforcement. The CI went to the residence where Defendant was staying, and purchased heroin from Defendant in front of the residence.

According to the pretrial services report, Defendant is 53 years old. He was born in Chicago, Illinois, but has lived in Waterloo for the past 30 years. He has lived with his mother in Waterloo since February 2012, and would return to her residence if released.

2

Defendant is currently single, but is engaged to Veronica Kelly (a co-defendant). He was married once before. He has three children from his prior marriage. He also has three additional children from two separate relationships.

Since February 2012, Defendant has been employed as a laborer. Defendant was diagnosed with hepatitis C five years ago, but he is not prescribed any medication for this condition. His mother also told the pretrial services officer that he suffers from high blood pressure. Defendant reported no history of mental or emotional health concerns. Defendant told the pretrial services officer that he has no history of alcohol abuse. He also stated that he had not smoked marijuana in about 30 years. However, Defendant reported that he started using heroin when he was 16, and has used heroin daily for most of his adult life. He last used heroin on the day that he was arrested in the instant federal matter.

Defendant has an extensive criminal record. In 1990, Defendant was charged with disorderly conduct. The disposition of that case is unknown. In 1991, Defendant was charged and later convicted of trespass. In 1993, Defendant was charged and later convicted of fifth degree theft. In May 1995, Defendant was charged and later convicted of fifth degree theft. In October 1995, Defendant was charged and later convicted of possession with intent to deliver cocaine (three counts), possession with intent to deliver heroin, and failure to affix tax stamp. Defendant received suspended prison sentences on all counts and 5 years probation. In January 2000, while on probation, Defendant was charged and later convicted of domestic abuse assault. In May 2000, Defendant was found in violation of his probation in the 1995 drug charges. He was sentenced to a residential facility. He was discharged from probation in February 2002.

In 2002, Defendant was charged in three separate cases. He was convicted of possession of a controlled substance, possession of heroin, and possession of cocaine, third or subsequent offense.[3] The drug charges occurred while his other 2002 charges were pending. He was given a suspended sentence, 5 years probation, and a 1 year residential

---

[3] A charge of public intoxication was dismissed.

3

facility term on the drug charges. Defendant apparently successfully completed his probation.

On June 20, 2009, Defendant was charged with harassment of a public officer. That charge was ultimately dismissed. On the same date, Defendant was charged and later convicted in a different case with separate counts of possession of a controlled substance, third or subsequent offense, and possession of marijuana, third or subsequent offense. Defendant was sentenced to 15 years and 5 years respectively, on the two counts. He was paroled on February 9, 2012. The instant federal charges occurred while Defendant was on parole.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies

committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for

which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin, distribution of heroin near a protected location, possession with intent to distribute, and money laundering conspiracy. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence with regard to distribution of heroin and possession with intent to distribute charges is strong. A traffic stop was conducted on a vehicle Defendant was driving. Law enforcement found 75 grams of heroin in Defendant's pants. At the time of the traffic stop, Defendant admitted working with Dominic Watts to bring heroin from Chicago to Waterloo for distribution. Defendant was also involved in a controlled drug transaction, where he was contacted by a CI, met with the CI, and sold heroin to the CI. With regard to the conspiracy charges, it is difficult for the Court in a detention hearing to weigh the evidence of an alleged conspiracy. However, law enforcement has information from multiple witnesses that Defendant was a heroin source and involved in the conspiracy.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results in overdose and death. Defendant is a heroin addict, and told the pretrial services officer that he has used heroin on a daily basis for most of his adult life. Defendant also has an extensive criminal record, including multiple felony drug convictions. Moreover, Defendant was on parole at the time of the alleged instant federal offenses. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Therefore, based on the serious nature and circumstances of the offense, Defendant's substantial criminal record, including multiple felony drug convictions, committing criminal offenses while on parole, his active use of heroin, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (September 5, 2012) to the filing of this Ruling (September 18, 2012) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 18th day of September, 2012.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA